UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION


GEORGE ILGENFRITZ,                    )
                                      )
          Plaintiff,                  )
                                      )
     vs.                              )          Case No. 2:06CV00055 ERW
                                      )
TOMMY TIPLER, et al.,                 )
                                      )
          Defendants.                 )


**MEMORANDUM AND ORDER**

     This matter comes before the Court on Defendant Tipler's Motion for Summary Judgment

[doc. #85]; Motion of Defendants Steele, Cornell and Dwyer for Summary Judgment [doc. #87];

Plaintiff's Appointed Attorney's Request for Compensation of Services and Reimbursement of

Out-Of-Pocket Expenses [doc. #69]; and Plaintiff's Appointed Attorney's Second Request for

Compensation of Services and Reimbursement of Out-Of-Pocket Expenses [doc. #79].

**I.      PROCEDURAL BACKGROUND**

     On September 5, 2006, George Ilgenfritz ("Plaintiff"), an inmate with the Missouri

Department of Corrections, initiated a civil lawsuit by depositing a Complaint with prison

authorities, to be mailed to the Court Clerk for the United States District Court of the Eastern

District of Missouri for filing.  The named defendants to the lawsuit were Tommy Tipler, Michael

Cornell, the State of Missouri, the Missouri Department of Corrections, a number of unknown

Department of Corrections officers and employees, and three individuals identified only as John

Doe #1, John Doe #2, and John Doe #3.  The Complaint alleged various constitutional rights

violations and related state claims stemming from incidents in which other inmates purportedly

entered Plaintiff's cell and attacked him. Plaintiff asserted that Defendant Tommy Tipler remotely unlocked Plaintiff's cell door before each incident, allowing the other inmates to enter and attack him. Plaintiff further alleged that other corrections officers were aware of the situation, but failed to properly respond.

On November 13, 2006, the Court dismissed all of Plaintiff's claims against both the State of Missouri and the unknown Department of Corrections officers and employees. On January 10, 2007, Plaintiff filed an Amended Complaint which added Michael Steele as a defendant, and which terminated the claims against John Doe #1, John Doe #2, and John Doe #3. On April 23, 2008, the Court granted Missouri Department of Corrections' Motion to Dismiss, thereby terminating the claims against that defendant. Then, on November 25, 2008, the Court granted Plaintiff's Motion for Leave to Amend Complaint and Add Additional Party, thereby allowing Plaintiff to file a Second Amended Complaint which added Charles Dwyer as a defendant. Thus, the remaining Defendants in this case are Tommy Tipler, Troy Steele, Michael Cornell, and Charles Dwyer (collectively, "Defendants"; Mr. Steele, Mr. Cornell, and Mr. Dwyer are collectively referred to as "the Prison Official Defendants").[1] Defendant Tipler filed his pending Motion for Summary Judgment [doc. #85] on March 20, 2009; the Prison Official Defendants also filed their separate pending Motion for Summary Judgment [doc. #87] on March 20, 2009.

---

[1]According to Plaintiff's Second Amended Complaint [doc. #74], each of these Defendants is sued in his individual capacity.

## II.    DEFENDANT TIPLER'S MOTION FOR SUMMARY JUDGMENT

### A.    BACKGROUND FACTS[2]

The Court begins by noting that, in a Motion for Summary Judgment, the Local Rules require the nonmoving party to "include a statement of material facts as to which the party contends a genuine issue exists," and to provide specific references to the record for those matters contested by the nonmoving party.  Local Rule 7-4.01(E).  Any matters that are not specifically controverted by the nonmoving party are deemed admitted for the purpose of summary judgment. *Id.*  Local rules such as this are implemented in order to prevent district courts from having to "scour the record looking for factual disputes."  *Nw. Bank & Trust Co. v. First Ill. Nat'l Bank*, 354 F.3d 721, 725 (8th Cir. 2003).

In addition, Federal Rule of Civil Procedure 56(e) requires the nonmoving party to respond to a Motion for Summary Judgment, but the party "may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial."  This requires the nonmoving party to present "'more than a scintilla of evidence.'"  *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 812 (8th Cir. 2008) (quoting *Williams v. City of Carl Junction*, 480 F.3d 871, 873 (8th Cir. 2007)).  The district court "'is not obligated to wade through and search the entire record for some specific facts which might support the nonmoving party's claim.'" *Holland v. Sam's Club*, 487 F.3d 641, 644 (8th Cir. 2007) (quoting *Pedroza v. Cintas Corp. No. 2*, 397 F.3d 1063, 1069 (8th Cir. 2005)).

---

[2]The Court's recitation of the facts is taken from Defendant Tipler's Statement of Undisputed Facts [included in doc. #86].  The Court also considered the exhibits submitted by the Parties, where appropriate.

In this case, Plaintiff's Memorandum in Opposition to the Motion of Defendant Tipler for Summary Judgment [doc. #91] does not include a statement of material facts as to which Plaintiff contends a genuine issue exists at all, nor one that properly conforms to the requirements of the Local Rules and the Federal Rules of Civil Procedure. Plaintiff does not controvert any of the facts set forth by Defendant Tipler, so the Court will deem admitted each fact contained within Defendant Tipler's Statement of Undisputed Facts for the purpose of the pending Motion for Summary Judgment.

Turning now to the facts relevant to Defendant Tipler's Motion for Summary Judgment, Plaintiff George Ilgenfritz is an inmate in the custody of the Missouri Department of Corrections ("MDOC"). Plaintiff is incarcerated because of four convictions for sodomy and four convictions for sodomy of a child under 14. At all times relevant to this cause of action, Plaintiff was incarcerated at an MDOC facility in Charleston, Missouri, named the Southeast Correctional Center ("SECC").

In 2005, Defendant Tipler was employed by MDOC as a Corrections Officer I, and worked at SECC. While at SECC, Defendant Tipler worked in the position that is commonly referred to in the prison vernacular as the "bubble officer." The "bubble" is the section in the middle of four wings of a housing unit. A "bubble officer" is usually in the "bubble" by himself, and has the ability to open the doors into the various housing unit wings. When working as the "bubble officer," Defendant Tipler would open the cell door for an inmate who was trying to get into his individual cell. If the inmate was attempting to enter into a cell that was not his, Defendant Tipler testified that he would not open the door.

Plaintiff claims in his Complaint that on or around March 1, 2005, Defendant Tipler began unlocking Plaintiff's cell to allow other inmates access, which resulted in him being raped and beaten on numerous occasions. Plaintiff estimates that this happened about seven times. According to Plaintiff, this occurred once a day in the morning (around 8:00 a.m.), and lasted for about a week. On each of these seven occasions, Plaintiff was asleep in his cell, and would wake up to find inmates in his cell. Because he was asleep in his cell, Plaintiff does not know who was in the "bubble" at the time of the incident. Plaintiff assumes that Defendant Tipler was in the "bubble" when these inmates would enter, because Plaintiff observed Defendant Tipler in the "bubble" when he came back from breakfast at around 6:15 a.m. Plaintiff admits that his cellmate could have opened the door to their cell by asking the "bubble officer" to open the door.

After these alleged rapes occurred, Plaintiff never requested medical attention. Plaintiff never reported the rapes while they were occurring, and he never requested to be placed in protective custody because of the alleged rapes. Plaintiff states that he never filed any kind of prison grievance about these alleged rapes.

Plaintiff also alleges that Defendant Tipler allowed one robbery to happen in his cell in September of 2005. Plaintiff's Second Amended Complaint states that this alleged robbery happened on or about September 13, 2005. Additionally, Plaintiff's initial *pro se* Complaint and his informal resolution request, grievance, and grievance appeal related to this incident all state that this alleged robbery happened on September 13, 2005. According to his MDOC attendance records, Defendant Tipler was not at work on September 13, 2005.

In his initial verified *pro se* Complaint filed in this case, Plaintiff alleged, under penalty of perjury, that only *one* inmate came into his cell and beat and robbed him on September 13, 2005.

However, Plaintiff stated in his deposition that on this September 13, 2005 occasion, Defendant Tipler opened up Plaintiff's cell door and allowed *four* inmates to enter into his cell. One of these four inmates was Plaintiff's cellmate, but Plaintiff does not know who the other three inmates were. Plaintiff agrees that it was not improper for his cellmate to enter into the cell they shared at this time. In his deposition, Plaintiff testified that one inmate hit him, knocking him back on his bunk. He further testified that the same inmate hit him an unknown number of times, knocking him unconscious. Plaintiff testified that while this was going on, he could see the other inmates robbing him.

When Plaintiff regained consciousness, there was only one inmate in his cell. He went to push an alarm button located in his cell, at which time he realized that the inmate in his cell was his cellmate. He was able to identify the inmate because the hood the inmate was wearing fell off. At that point, Plaintiff contends that his cellmate stabbed him three times in the stomach. Plaintiff testified that he did not request medical attention for his stab wounds because the same cellmate who stabbed him helped patch up his wounds with Scotch tape. Plaintiff was seen by medical personnel on September 14, 2005. His medical records make no mention of any stab wounds.

Plaintiff's cellmate was not on his enemy list at the time of this incident, and Plaintiff stated that he did not see any danger posed by his cellmate prior to the incident. A few months before this September 13, 2005 incident, Plaintiff stated that he did not need protective custody, and that he was not aware of any enemies amongst the inmate population. Plaintiff does not allege that he was raped during this September 13, 2005 robbery.

## B.  LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Supreme Court has noted that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Id.* at 327 (quoting Fed. R. Civ. P. 1). "By its very terms, [Rule 56(c)(1)] provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Further, if the nonmoving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.

The initial burden of proof in a motion for summary judgment is placed on the moving party to establish the absence of any genuine issue of material fact. *Id.* at 323; *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991). Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden then shifts to the nonmoving party who must

set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. *Anderson*, 477 U.S. at 250; Fed. R. Civ. P. 56(e)(2). When the burden shifts, the nonmoving party may not rest on the allegations in its pleadings, but, by affidavit and other evidence, must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 465 (8th Cir. 2002). To meet its burden, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In fact, the nonmoving party must show there is sufficient evidence favoring the nonmoving party which would enable a jury to return a verdict for it. *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 334. "If the non-moving party fails to produce such evidence, summary judgment is proper." *Olson*, 943 F.2d at 883.

The Court may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of any factual issue." *Kampouris v. St. Louis Symphony Soc.*, 210 F.3d 845, 847 (8th Cir. 2000). The Court instead "perform[s] only a gatekeeper function of determining whether there is evidence in the summary judgment record generating a genuine issue of material fact for trial on each essential element of a claim." *Id.*

C.    **DISCUSSION**

Two of the three Counts listed in Plaintiff's Second Amended Complaint [doc. #74] are asserted against Defendant Tipler. First, Plaintiff argues that Defendant Tipler violated his Eighth Amendment right to be free from cruel and unusual punishment, by failing to protect him from harm caused by other inmates. Second, Plaintiff asserts a supplemental Missouri state law negligence claim against Defendant Tipler. Each of these claims will be addressed, in turn.

1.      *Failure to Protect (Count I)*

Before examining whether Defendant Tipler actually failed to protect Plaintiff, and thereby violated Plaintiff's Eighth Amendment rights, the Court must examine whether Plaintiff has complied with the requirements of the Prison Litigation Reform Act ("PLRA"). The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This statute requires the immediate dismissal of any claims brought by an inmate under 42 U.S.C. § 1983, or any other federal law, as to which the inmate has not exhausted his or her available administrative remedies. *See Gibson v. Weber*, 431 F.3d 339, 341 (8th Cir. 2005). The United States Supreme Court recently held that when an inmate has exhausted his or her administrative remedies as to some, but not all, of his or her claims, the trial court should proceed with the exhausted claims, rather than dismissing the entire action. *Jones v. Bock*, 549 U.S. 199, 219-24 (2007).

The MDOC's administrative grievance process "requires an inmate to file informal resolution requests, grievances, and grievance appeals before the process is exhausted and the inmate can file suit in court." *Cooper v. Minor*, 16 S.W.3d 578, 580 (Mo. 2000) (en banc). In this case, Plaintiff filed an informal resolution request, grievance, and grievance appeal with the MDOC only with respect to the alleged September 13, 2005 incident. It is undisputed that Plaintiff did not file any of those documents for the incidents which allegedly occurred in March of 2005, or for any other incidents. Accordingly, this Court finds that Plaintiff did not exhaust his administrative remedies with respect to any § 1983 failure to protect claims based on his

treatment prior to September 13, 2005. Any such claims are dismissed and will not be considered for the purpose of this Motion.

Turning now to Plaintiff's failure to protect claim regarding the events of September 13, 2005, Plaintiff claims that Defendant Tipler violated his Eighth Amendment rights by failing to protect him from attacks by other inmates. The United States Supreme Court has established that "prison officials . . . must take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotations omitted). In particular, "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Id.* at 833 (internal quotations omitted; alteration in original). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834. In order to establish a violation of the Eighth Amendment due to failure to protect, two requirements must be met: 1) the deprivation, viewed objectively, must have been sufficiently serious, and 2) the prison official must have acted with deliberate indifference to the inmate's health or safety. *Id.* With respect to the first element, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* As to the second element, a prison official cannot be held liable for failing to protect an inmate unless "the official knows of and disregards an excessive risk to inmate health or safety." *Id.* at 837.

In this case, Plaintiff alleges that Defendant Tipler opened the door to Plaintiff's cell to allow one or more inmates (including Plaintiff's cellmate) to enter and beat, rob, and stab Plaintiff on September 13, 2005. First, it is important to note that the undisputed evidence is that MDOC attendance records show that Defendant Tipler was not working on September 13, 2005. Thus, it

appears that Defendant Tipler was not even present at SECC when this alleged attack occurred. As a result, he could not have been responsible for opening the cell door, and making Plaintiff susceptible to an attack.

Nevertheless, assuming that Defendant Tipler was actually working as a "bubble officer" at SECC on September 13, 2005, Plaintiff has failed to establish the two elements of a failure to protect claim. First, there is no evidence that there was a substantial risk of serious harm to Plaintiff. One of the inmates (and possibly the only inmate) that allegedly entered Plaintiff's cell on September 13, 2005 was Plaintiff's cellmate. It is undisputed that it was not improper to allow Plaintiff's cellmate to enter the cell. Thus, the "bubble officer" appropriately opened the cell door for Plaintiff's cellmate; in fact, this is the job that the "bubble officer" is assigned to perform. Second, even if there was a substantial risk of serious harm, there is no evidence that Defendant Tipler knew of and disregarded that risk. Rather, Defendant Tipler would have had no reason to suspect that Plaintiff's cellmate posed a threat to Plaintiff's safety, because Plaintiff's cellmate was not on his enemy list at the time of the alleged attack.

Although Plaintiff's allegations are inconsistent, it is possible that there were more attackers than just Plaintiff's cellmate.[3] However, even if additional inmates entered Plaintiff's cell, it could not have been the result of actions by Defendant Tipler. Plaintiff has not offered any evidence to controvert Defendant Tipler's testimony that if an inmate was attempting to enter into

---

[3]The Court recognizes that a dispute exists regarding how many attackers were present in Plaintiff's cell during the alleged September 13, 2005 attack. However, the presence of this dispute does not create a genuine issue of material fact that would prevent this Court from granting summary judgment. *See Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361, 1365-66 (8th Cir. 1983) ("A party should not be allowed to create issues of credibility by contradicting his own earlier testimony.").

a cell that was not his, Defendant Tipler would not open the cell door. Thus, the additional inmates that entered (if any) must have been let in by Plaintiff's cellmate.

Accordingly, the Court finds that Plaintiff's failure to protect claims against Defendant Tipler must fail. Because there was no constitutional violation, the Court need not reach the issue of whether the Defendant officers are entitled to qualified immunity. The Court finds that no genuine issue of material fact exists regarding the alleged failure of Defendant Tipler to protect Plaintiff. Defendant Tipler is entitled to summary judgment on this Count.

### 2. *Supplemental State Law Negligence Claims (Count II)*

In addition to his failure to protect claim, Plaintiff asserts a supplemental Missouri state law negligence claim against Defendant Tipler. Specifically, Plaintiff alleges that "Defendant Tipler allowed other inmates to enter Plaintiff's cell by unlocking his cell door." (Pl.'s 2d Am. Complaint, doc. #74, p.6).

Again, the Court must consider whether Plaintiff exhausted his available administrative remedies, this time for the purpose of determining whether Plaintiff complied with the Missouri state law version of the PLRA. Missouri law provides that "[n]o civil action may be brought by an offender, except for a constitutional deprivation, until all administrative remedies are exhausted." Mo. Rev. Stat. § 506.384.1. Because this case involves an alleged constitutional deprivation, it initially appears that this Missouri statute does not require Plaintiff to exhaust all of his administrative remedies. However, the statute continues, "[a] civil action pursued by an offender in a court of this state alleging in whole or in part a violation of federal law shall be subject to all limitations on remedies established by federal law." Mo. Rev. Stat. § 506.384.3. Thus, the requirements set forth in the PLRA also apply to Plaintiff's state law claims.

As set forth in the preceding section, Plaintiff did not comply with the MDOC administrative grievance process with respect to any negligence claims based on his treatment prior to September 13, 2005. Any such claims must be dismissed and will not be considered for the purpose of this Motion. However, because Plaintiff did follow the appropriate administrative grievance process with respect his negligence claims regarding the alleged September 13, 2005 incident, the Court will proceed with an analysis of this claim.[4]

Defendant Tipler raised various arguments as to why Plaintiff's negligence claims are barred, including arguments based on the applicable statute of limitations, official immunity, and the public duty doctrine. However, the argument made by Defendant Tipler, that the Court finds most persuasive, is his argument that Plaintiff cannot satisfy the elements of a negligence claim. Therefore, the Court will focus its attention on this argument.

Under Missouri law, in order to prevail on a negligence claim, "'the plaintiff must establish the existence of a duty on the part of the defendant to protect plaintiff from injury, failure of the defendant to perform that duty, and that plaintiff's injury was proximately caused by defendant's

---

[4]In his Memorandum in Opposition to the Motion of Defendant Tipler for Summary Judgment [doc. #91], Plaintiff argues that "even if Plaintiff's claims were to fall within [the Missouri prison litigation reform act], the appropriate remedy is not dismissal of the claims, but rather a stay of the action pending the exhaustion of administrative remedies, per the holding in *Cooper v. Minor*, 16 S.W.3d 578, 582 (Mo. Banc 2000)." However, Plaintiff misstates the holding of the *Cooper* court. In *Cooper*, the Missouri Supreme Court determined that when a prisoner does not have enough time to completely exhaust his or her administrative remedies before the statute of limitations for the cause of action expires, a court should "allow[] suit to be filed, but requir[e] that any action on the suit be stayed pending the exhaustion of administrative remedies." *Cooper v. Minor*, 16 S.W.3d 578, 582 (Mo. 2000) (en banc). In this case, Plaintiff never pursued any administrative remedies with respect to incidents occurring before September 13, 2005; it is not the case that Plaintiff was pursuing his administrative remedies, but was unable to complete the process before the statute of limitations for filing this case had run. Thus, *Cooper* is inapplicable to this case.

failure.'" *Seitz v. Lemay Bank & Trust Co.*, 959 S.W.2d 458, 463 (Mo. 1998) (en banc) (quoting *Krause v. U.S. Truck Co.*, 787 S.W.2d 708, 710 (Mo. 1990) (en banc)).  Plaintiff has failed to meet his burden with respect to two elements.  First, Plaintiff has not demonstrated that there existed a duty on the part of Defendant Tipler to protect Plaintiff from injury.  Whether a person has a duty to protect another person is a question of law that is based on foreseeability.  *L.A.C. ex rel. D.C. v. Ward Parkway Shopping Ctr. Co.*, 75 S.W.3d 247, 257 (Mo. 2002) (en banc). Specifically, "'[a] duty of care arises out of circumstances in which there is a foreseeable likelihood that particular acts or omissions will cause harm or injury.'" *Id.* (quoting *Madden v. C & K Barbecue Carryout, Inc.*, 758 S.W.2d 59, 62 (Mo. 1988) (en banc)).  In this case, it cannot be said that there was a foreseeable likelihood that opening Plaintiff's cell door for Plaintiff's cellmate would result in the attack alleged by Plaintiff.  As set forth by the Court in the preceding section, Defendant Tipler would have had no reason to suspect that Plaintiff's cellmate posed a threat to Plaintiff's safety, because Plaintiff's cellmate was not on his enemy list at the time of the alleged attack.

Second, even if Defendant Tipler did have such a duty, Plaintiff has not demonstrated that he failed to perform that duty.  "Breach of duty refers to the commission or omission of an act that the actor should or should not have done in accordance with the relevant standard of care." *Ostrander v. O'Banion*, 152 S.W.3d 333, 338 (Mo. Ct. App. 2004).  More specifically, the issue is "what act should the tortfeasor have done or not done under the particular facts of the case, that can be characterized under the applicable definition as negligence."  In this case, according to MDOC attendance records, it does not even appear that Defendant Tipler was present at SECC on September 13, 2005 to breach whatever duty he may have had to Plaintiff.  Even if he were

14

present, there is no evidence that Defendant Tipler did anything other than what he was required to do as a "bubble officer," that is, opening cell doors for inmates to enter their own cells. As set forth above, one of the inmates (and possibly the only inmate) that allegedly attacked Plaintiff was Plaintiff's cellmate; and, it is undisputed that it was not improper to allow Plaintiff's cellmate to enter the cell that he lived in with Plaintiff.

Thus, the Court finds that Plaintiff cannot establish the elements of a negligence claim. The Court finds that no genuine issue of material fact exists regarding the alleged negligence of Defendant Tipler. Defendant Tipler is entitled to summary judgment on this Count. Additionally, because this Court has found that Defendant Tipler is entitled to summary judgment on both of the Counts that Plaintiff asserted against him, the Court will grant his Motion for Summary Judgment.

## III.    DEFENDANTS STEELE, CORNELL AND DWYER'S MOTION FOR SUMMARY JUDGMENT

### A.    BACKGROUND FACTS[5]

Again, the Court begins by noting that Plaintiff's Memorandum in Opposition to the Motion of Defendants Steele, Cornell and Dwyer for Summary Judgment [doc. #90] does not include a statement of material facts as to which Plaintiff contends a genuine issue exists at all, nor one that properly conforms to the requirements of the Local Rules and the Federal Rules of Civil Procedure. As the Court fully set forth the applicable Local Rules and Federal Rules of Civil Procedure in the preceding section, they will not be repeated here. The Court merely notes that

---

[5]The Court's recitation of the facts is taken from the Prison Official Defendants' Statement of Uncontroverted Material Facts [included in doc. #88]. The Court also considered the exhibits submitted by the Parties, where appropriate.

because Plaintiff did not specifically controvert any of the facts set forth by the Prison Official Defendants, the Court will deem admitted each fact contained within the Prison Official Defendants' Statement of Uncontroverted Material Facts for the purpose of the pending Motion for Summary Judgment.

Turning now to the facts relevant to the Prison Official Defendants' Motion for Summary Judgment, Plaintiff was committed to the custody of the Missouri Department of Corrections ("MDOC") after he pleaded guilty in the Circuit Court of St. Charles County, Missouri, to eight felony counts, including sodomy and sodomy of a child under age 14. In 2005, Plaintiff was incarcerated at MDOC's Southeast Correctional Center ("SECC") in Charleston, Missouri.

Defendant Tommy Tipler was hired by the MDOC as a Correctional Officer I ("CO I") on August 27, 2001. He was transferred to SECC from another MDOC penitentiary in early 2005. MDOC placed Defendant Tipler on administrative leave in December of 2005, and then terminated his employment in 2006, for reasons unrelated to Plaintiff's allegations.

Defendant Charles Dwyer was superintendent of SECC until his retirement on December 31, 2005. In early 2005, Defendant Dwyer signed a form approving Defendant Tipler's transfer to SECC, but he had no discretion to reject the transfer. Defendant Troy Steele was appointed superintendent[6] of SECC on January 1, 2006, after all of the events alleged in Plaintiff's Complaint had occurred. Defendant Michael Cornell was an assistant superintendent at SECC during all of 2005. SECC utilizes the following military-style command (from lowest to highest ranking): CO I, sergeant, lieutenant, captain, major, associate superintendent, and superintendent.

---

[6]The position is now known more descriptively as "warden."

CO I's are supervised by and report staff misconduct and altercations between inmates to their immediate supervisor, a sergeant.

The cellblock at SECC is made up of four wings that extend outward from a windowed central hub or "bubble." Each of the four wings contains 72 cells, and each cell houses two inmates. The wings are patrolled by CO I's, who walk each wing twice per hour. During his employment at SECC, Defendant Tipler sometimes worked as a "bubble officer." The "bubble officer" does not patrol the wings, but remains in the "bubble," where he remotely unlocks cell doors as necessary, using computerized equipment. In addition, prison staff can open the cell doors using keys. Cell doors at SECC lock automatically when closed. An inmate inside his cell may request that the "bubble officer" open his cell door to permit him to exit by utilizing an intercom system. SECC policy provides that "bubble officers" may not open an individual cell door to allow an inmate to enter a cell without first verifying that the inmate lives in the cell he is attempting to enter. Defendant Tipler was aware of this policy.

All CO I's receive at least six weeks of training, including training on MDOC policies and procedures, when hired by the MDOC. They also receive 40 additional hours of training each year during their employment. CO I's working at SECC have access to all MDOC policies and procedures via an internal computer system. Additionally, the policies and procedures applicable to the "bubble officer" assignment, including cell door operation, are posted within the "bubble."

Plaintiff testified that approximately seven times during a one-week to twenty-day period in March 2005, other inmates entered his cell in Housing Unit 4 and raped, beat, and robbed him. Plaintiff claims that Defendant Tipler allowed his assailants to enter his cell by remotely unlocking the cell door. Plaintiff did not report any of these assaults to prison staff and did not seek medical

treatment for any alleged injuries. Plaintiff testified that later in March of 2005, he told another inmate about the aforementioned assaults, after the inmate promised to keep his "secret." Plaintiff claims that despite this promise, the other inmate notified prison staff members (who are not parties to this action). According to Plaintiff, he then confirmed the other inmate's report to these staff members, who told Plaintiff that he would be moved to another housing unit. Plaintiff testified that also in approximately March of 2005, Defendant Tipler opened Plaintiff's cell door to permit another inmate to enter his cell and steal his pantsuit. Plaintiff claims that he reported this incident to a prison staff member (who is not a party to this action). Plaintiff was then moved to another housing unit.

MDOC grievance procedures require that an inmate, wishing to grieve any issue regarding the conditions of his confinement, must first file an Informal Resolution Request ("IRR"). IRRs are investigated by a prison staff member, who presents the investigative file, along with a suggested response, to a functional unit manager or assistant superintendent for signature. An offender who is dissatisfied with the response to his IRR must then file an Offender Grievance ("OG"). The OG is investigated by a caseworker, who presents the investigative file, along with the caseworker's suggested response, to the superintendent. The superintendent then issues his response either by signing off on the caseworker's suggested response, or by substituting his own response. Should an inmate wish to contest the superintendent's response to his OG, he must then file an appeal to the MDOC. After the MDOC issues its response to the appeal, an inmate has exhausted his administrative remedies under the MDOC's grievance procedures. Plaintiff did not file any IRR or other grievance regarding any of the aforementioned allegations.

While in the other housing unit, Plaintiff was placed in administrative segregation for

conduct violations.  On June 28, 2005, Plaintiff signed a form attesting to his belief that he did not

need to be in protective custody, he was not aware of any enemies among the inmate population,

and he did not believe himself to be in any danger.  In approximately August of 2005, Plaintiff was

released from administrative segregation, and returned to his cell in Housing Unit 4.

Plaintiff testified that on September 13, 2005, he was robbed and stabbed after Defendant

Tipler opened Plaintiff's cell door, allowing Plaintiff's cellmate and three other inmates to enter

the cell.  According to Plaintiff, the inmate who stabbed Plaintiff was his cellmate, who was

authorized to enter the cell at any time.  Plaintiff did not immediately report the incident of

September 13, 2005, or request medical attention.  Instead he claims that his cellmate reported the

incident three or four days later.  Plaintiff testified that upon receipt of this report, SECC staff

members (who are not parties to this action) placed Plaintiff in protective custody, photographed

his injuries, and took him to the medical unit for treatment.[7]  On October 7, 2005, Plaintiff filed an

IRR alleging that unnamed inmates beat and robbed him on September 13, 2005, after an

---

[7]Plaintiff's version of the facts with respect to when the September 13, 2005 incident was
reported differs from other witnesses and parties.  Defendant Tipler testified that two prison staff
members who are not parties to this action told him that Plaintiff had reported this incident to
them on the day it occurred, but when Defendant Tipler questioned Plaintiff about it, he refused
medical treatment.  On September 14, 2005, two SECC staff members wrote Interoffice
Communications ("IOCs"), describing Plaintiff's report that he was assaulted and robbed the
previous day.  One of these individuals (Robert Dunn) testified by deposition that after Plaintiff
told him about the incident, he took Plaintiff to a secure area where he was questioned about the
incident, placed in protective custody, and taken to the medical unit.  In addition, another staff
member testified that she wrote an IOC sometime after October 13, 2005, when Plaintiff reported
that he had been assaulted and robbed by other inmates.  Neither the authors nor the recipients of
these IOCs are parties to this action.  Despite this inconsistent testimony, the Court will adopt
Plaintiff's version of the facts, as it must.  *See Marts v. Xerox, Inc.*, 77 F.3d 1109, 1112 (8th Cir.
1996) ("like the district court, we must construe the evidence in the light most favorable to the
nonmoving party") (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986)).

unnamed CO I opened his cell door. On November 29, 2005, Plaintiff filed an OG regarding the alleged September 13, 2005 incident, in which he identified Defendant Tipler as the CO I who allowed his assailants to enter his cell. In December of 2005, or January of 2006, Plaintiff was transferred to another MDOC facility. In December of 2005, Defendant Tipler was placed on administrative leave for reasons unrelated to Plaintiff's allegations. Defendant Tipler never returned to work for the MDOC.

Plaintiff did not report any of the aforementioned allegations to any of the Prison Official Defendants, and none of the Prison Official Defendants learned of his allegations until after all of the events set forth in Plaintiff's Complaint had occurred. During his tenure at SECC, Defendant Dwyer never learned of any allegations that Defendant Tipler, or any other prison employee, had opened cell doors contrary to policy. Additionally, Defendant Dwyer was never made aware of any disciplinary problems regarding Defendant Tipler, either prior to or during Defendant Tipler's tenure at SECC. Defendant Dwyer met Defendant Tipler in December of 2005, when he notified Defendant Tipler that the MDOC had placed him on administrative leave. Defendant Dwyer retired on December 31, 2005, before Plaintiff's OG was presented to the superintendent for review. Defendant Dwyer did not learn of any of Plaintiff's allegations until after he was named as a defendant in this lawsuit.

Defendant Steele became SECC superintendent after all of the events alleged in Plaintiff's Complaint. Plaintiff was no longer incarcerated at SECC when Defendant Steele arrived there, and Defendant Tipler never worked at SECC during Defendant Steele's tenure. Defendant Steele did review and respond to Plaintiff's OG on January 3, 2006.

Defendant Cornell saw Plaintiff's account of the September 13, 2005 incident in Plaintiff's October 7, 2005 IRR. A prison employee (who is not a party to this action) responded to Plaintiff's IRR. The record contains no evidence that Defendant Cornell had knowledge of Plaintiff's allegations until Defendant Cornell saw Plaintiff's IRR.

## B.     LEGAL STANDARD

As the legal standard for summary judgment is stated in full above, the Court will merely reiterate that a court may grant a motion for summary judgment only if all of the information before that court shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## C.     DISCUSSION

Each of the three Counts listed in Plaintiff's Second Amended Complaint [doc. #74] are asserted against the Prison Official Defendants. The Court will address each of the Counts, in turn, after briefly addressing an issue that only applies to Defendant Troy Steele.

### 1.     *Defendant Troy Steele*

In their Memorandum in Support of the Motion of Defendants Steele, Cornell and Dwyer for Summary Judgment [doc. #88], the Prison Official Defendants argue that Defendant Troy Steele cannot be held liable under 42 U.S.C. § 1983 because he was not employed at SECC during any of the events alleged in Plaintiff's Complaint. In Plaintiff's Memorandum in Opposition to the Motion of Defendants Steele, Cornell and Dwyer for Summary Judgment [doc. #90], Plaintiff recognizes that "Defendant Steele should properly be dismissed from Plaintiff's Complaint, due to the fact that he assumed the position of Superintendent following all incidents

of assault and theft upon the Plaintiff." This Court agrees that Defendant Steele cannot be held liable for events occurring on September 13, 2005, when Defendant Steele did not begin working at SECC until January 1, 2006. Thus, Defendant Steele is entitled to summary judgment on all of the claims that Plaintiff asserts against him.

### 2. *Failure to Protect (Count I)*

In Count I of his Second Amended Complaint [doc. #74], Plaintiff alleges that the Prison Official Defendants violated his Eighth Amendment rights by failing to protect him from attacks by other inmates. As set forth above, with respect to Defendant Tipler's Motion for Summary Judgment, in order to establish a violation of the Eighth Amendment due to failure to protect, two requirements must be met: 1) the deprivation, viewed objectively, must have been sufficiently serious, and 2) the prison official must have acted with deliberate indifference to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The Prison Official Defendants argue that Plaintiff cannot establish the second element, that they acted with deliberate indifference to Plaintiff's health or safety. This Court agrees.

Under the second element of the failure to protect test set forth in *Farmer*, a prison official cannot be held liable for failing to protect an inmate unless "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." 511 U.S. at 837. In this case, it is undisputed that none of the Prison Official Defendants learned of any of Plaintiff's allegations until after all of the events set forth in his Complaint. Plaintiff admitted that Defendant Dwyer did not learn of any of Plaintiff's allegations until he was named as a defendant in this lawsuit. Plaintiff also admitted that while Defendant

Dwyer was employed at SECC, he did not learn of any allegations that Defendant Tipler, or any prison employee, was opening cell doors in contravention of MDOC or SECC policy. With respect to Defendant Cornell, it is undisputed that he did not know about any of Plaintiff's allegations until he saw the IRR Plaintiff submitted on October 7, 2005. It is clear that Defendant Dwyer and Defendant Cornell did not have actual knowledge of a risk to Plaintiff's health and safety. Additionally, Plaintiff's failure to complain about any of the alleged incidents until after they had all occurred resulted in the inability of any of the Prison Official Defendants to infer that there might be a risk of danger to Plaintiff. Because neither Defendant Dwyer nor Defendant Cornell knew of Plaintiff's allegations until after all of the alleged events had occurred, they cannot be held liable for failure to protect. The Court finds that no genuine issue of material fact exists regarding the alleged failure of Defendant Dwyer or Defendant Cordell to protect Plaintiff. These Defendants are entitled to summary judgment on this Count.[8]

---

[8]The Court notes that Plaintiff argues that Defendant Tipler's personnel records reflected several disciplinary actions, and showed that he had some negative job performance appraisals in the past. Plaintiff also states that these records were available for review by both Defendant Dwyer and Defendant Cornell. Apparently, Plaintiff's argument is that Defendant Tipler's past performance should have notified Defendants Dwyer and Cornell that he would likely cause harm to inmates. The Court does not find this argument persuasive. First, there is no evidence that Defendant Cornell has any authority with respect to hiring and firing decisions. Second, while Defendant Dwyer held the highest position at SECC and presumably had some authority to hire and fire, the undisputed evidence is that Defendant Tipler was transferred to SECC and, although Defendant Dwyer approved the transfer, he had no authority to reject it. Finally, the disciplinary actions and negative job performance appraisals are minor. Two of the four disciplinary actions occurred after the events alleged by Plaintiff; and the two that occurred earlier for improper use of inter-office communication equipment and insubordination were not at all related to Plaintiff's allegations in this case. The negative job appraisals were minor and occurred well before Defendant Tipler was even transferred to SECC.

### 3. *Failure to Properly Train or Supervise (Count II)*

In Count II of his Second Amended Complaint, Plaintiff asserts that the Prison Official Defendants failed to "properly train, supervise, control, and/or discipline Defendant Tipler." The Court will first address Plaintiff's failure to properly train claim; then the Court will address Plaintiff's failure to properly supervise claim.

Liability for failure to properly train is actionable where "the failure to train rises to the level of 'deliberate indifference' to the people's rights." *Larkin v. St. Louis Hous. Auth. Dev. Corp.*, 355 F.3d 1114, 1117 (8th Cir. 2004) (quoting *S.J. v. Kansas City Pub. Sch. Dist.*, 294 F.3d 1025, 1029 (8th Cir. 2002)). In order to establish deliberate indifference, the plaintiff must demonstrate that the defendant "'had notice that its procedures were inadequate and likely to result in a violation of constitutional rights.'" *Larson by Larson v. Miller*, 76 F.3d 1446, 1454 (8th Cir. 1996) (quoting *Thelma D. by Dolores A. v. Bd. of Educ.*, 934 F.2d 929, 934 (8th Cir. 1991)). The plaintiff may demonstrate notice in two different ways: (1) "show that the failure to train employees is so likely to result in a violation of constitutional rights that the need for training is patently obvious," or (2) show that "a pattern of misconduct indicates that the [defendant's] responses to a regularly recurring situation are insufficient to protect . . . constitutional rights." *S.J.*, 294 F.3d at 1029.

In this case, there is no evidence to suggest that the Prison Official Defendants had notice that the established procedures and policies and the training provided to its employees were inadequate and likely to result in a violation of constitutional rights. To the contrary, it is undisputed that all CO I's hired by the MDOC receive *at least* six weeks of training initially. CO I's also receive forty additional hours of training each year during their employment. In case CO

I's need to have their memory of the rules refreshed, they have access to all MDOC policies and procedures at all times through the internal computer system. Additionally, an officer assigned to work in the "bubble" can also easily review the policies and procedures applicable to the "bubble officer" position, as they are posted within the "bubble." One of these policies provides that the "bubble officer" may not open an individual cell door to allow an inmate to enter a cell without first verifying that the inmate lives in the cell he is attempting to enter. It is undisputed that Defendant Tipler was aware of this policy.

The Court believes that six weeks (minimum) of initial training, followed by forty hours each year thereafter, is a sufficient amount of training for a CO I, the lowest ranking position at SECC. Additionally, if a CO I had forgotten a particular policy or procedure, SECC made it easy for that CO I to access the MDOC policies and procedures, especially with respect to the "bubble officer" position. Even if the training and established policies were not sufficient to prevent violations of constitutional rights, Plaintiff has offered no evidence to suggest that any of the Prison Official Defendants should have recognized that there was a recurring potential for constitutional violations. Instead, the undisputed evidence is that none of the Prison Official Defendants even knew of the alleged problem with Defendant Tipler opening cell doors until after the events at issue in this case. Finally, the Court notes that it appears that the real cornerstone of Plaintiff's Complaint is that Defendant Tipler allegedly broke the established rules, not that he didn't know the rules or didn't understand them. If Plaintiff's allegations that Defendant Tipler purposefully opened Plaintiff's cell door to allow other inmates to attack Plaintiff and cause him harm were true, it appears that it would not have been the lack of training that caused the attack,

rather would have merely been a blatant disregard for the clearly established policies of the MDOC. Thus, Plaintiff's failure to train claims must fail.

The Court also finds that Plaintiff's failure to adequately supervise claims must fail. "The standard of liability for failure to supervise is demonstrated deliberate indifference or tacit authorization of the offensive acts." *Tilson v. Forrest City Police Dept.*, 28 F.3d 802, 807 (8th Cir. 1994). Tacit authorization is present where a plaintiff shows "'that the official at least implicitly authorized, approved[,] or knowingly acquiesced in the unconstitutional conduct of the offending employees.'" *Shorts v. Bartholomew*, 255 F.App'x 46, 54 (6th Cir. 2007) (quoting *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989)) (alteration in original). Conversely, deliberate indifference is shown where a plaintiff presents evidence "that a municipal actor disregarded a known or obvious consequence of his action [or inaction]." *Bd. of Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 410 (1997).

As discussed in the Court's analysis of Plaintiff's failure to protect claim against the Prison Official Defendants, the undisputed evidence is that none of the Prison Official Defendants learned of any of Plaintiff's allegations until after all of the events set forth in his Complaint had already occurred. Because neither Defendant Dwyer nor Defendant Cornell knew about or anticipated the events that Plaintiff alleges, the Court cannot find that they tacitly authorized the actions or that they disregarded a known risk. Thus, Plaintiff's failure to adequately supervise claim must fail.

Neither of the claims asserted in Count II of Plaintiff's Second Amended Complaint [doc. #74] are meritorious. The Court finds that no genuine issue of material fact exists regarding the

alleged failure of Defendant Dwyer and Defendant Cordell to adequately train and supervise

Defendant Tipler. These Defendants are entitled to summary judgment on this Count.

                  4.     *Supplemental State Law Negligence Claims (Count III)*

In Count III of his Second Amended Complaint [doc. #74], Plaintiff asserts a

supplemental Missouri state law negligence claim against the Prison Official Defendants.

Specifically, Plaintiff alleges that the Prison Official Defendants were negligent in that they

"allowed Defendant Tipler to remain in the position as Bubble Door Operator so that Defendant

Tipler could abuse Plaintiff by allowing other inmates access to Plaintiff's cell to intimidate and

attack Plaintiff." The Prison Official Defendants argue that they are entitled to official immunity

with respect to Plaintiff's state law claims. This Court agrees.

Under the doctrine of official immunity, public employees are protected "from liability for

alleged acts of negligence committed during the course of their official duties for the performance

of discretionary acts." *Southers v. City of Farmington*, 263 S.W.3d 603, 610 (Mo. 2008) (en

banc). This immunity does not apply to "torts committed when acting in a ministerial capacity."

*Id.* "Whether an act is discretionary or ministerial depends on the 'degree of reason and judgment

required' to perform the act." *Davis v. Lambert-St. Louis Int'l Airport*, 193 S.W.3d 760, 763

(Mo. 2006) (en banc) (quoting *Kanagawa v. State By and Through Freeman*, 685 S.W.2d 831,

835 (Mo. 1985) (en banc)). A ministerial act "is one 'of a clerical nature which a public officer is

required to perform upon a given state of facts, in a prescribed manner, in obedience to the

mandate of legal authority, without regard to his own judgment or opinion concerning the

propriety of the act to be performed." *Southers*, 263 S.W.3d at 610 (quoting *Kanagawa*, 685

S.W.2d at 835). Conversely, discretionary acts require "the exercise of reason in the adaption of

means to an end and discretion in determining how or whether an act should be done or a course pursued." *Id.*

Plaintiff's negligence claims against Defendant Dwyer and Defendant Cornell are based on their allowing Defendant Tipler to continue working as a "bubble officer," even though he allegedly was not complying with the applicable policies. Setting aside the fact that there is no evidence that Defendant Dwyer and Defendant Cornell even made work assignments, the Court notes that Plaintiff's negligence claims are based on personnel decisions made by persons in their supervisory capacity. Missouri courts have found that, "[t]he hiring, training, and supervising of employees, the evaluation and investigation of events within the jail, and the assigning of inmates to particular cells are all discretionary acts for which [prison officials] are entitled official immunity." *Flora v. Moniteau County*, 2006 WL 2707347, at *7 (Mo. Ct. App. Sept. 19, 2006); *see also Gavan v. Madison Memorial Hosp.*, 700 S.W.2d 124, 127-28 (Mo. Ct. App. 1985). Because Plaintiff's negligence claims against Defendant Dwyer and Defendant Cornell are based on discretionary acts, the Court finds that these Defendants are entitled to official immunity. Thus, Plaintiff's negligence claims must fail and Defendant Dwyer and Defendant Cornell are entitled to summary judgment on this Count. Additionally, because this Court has found that the Prison Official Defendants are entitled to summary judgment on all of the Counts that Plaintiff asserted against them, the Court will grant their Motion for Summary Judgment.

## IV. APPOINTED ATTORNEY COMPENSATION AND REIMBURSEMENT

Since being appointed to represent Plaintiff in this matter, Mr. Jeffrey R. Curl has submitted two separate Requests for Compensation of Services and Reimbursement of Out-Of-Pocket Expenses [docs. #69, 79]. The Court requests that Mr. Curl submit one final Request,

following the termination of his representation of Plaintiff.  As a result, the Court will dismiss the pending Requests, but grant Mr. Curl leave to refile a single Request, including all fees and expenses requested.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Tipler's Motion for Summary Judgment [doc. #85] is **GRANTED**.  Plaintiff's claims against Defendant Tommy Tipler are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the Motion of Defendants Steele, Cornell and Dwyer for Summary Judgment [doc. #87] is **GRANTED**.  Plaintiff's claims against Defendants Troy Steele, Michael Cornell, and Charles Dwyer are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiff's Appointed Attorney's Request for Compensation of Services and Reimbursement of Out-Of-Pocket Expenses [doc. #69] and Plaintiff's Appointed Attorney's Second Request for Compensation of Services and Reimbursement of Out-Of-Pocket Expenses [doc. #79] are **DISMISSED WITHOUT PREJUDICE TO REFILING**.

Dated this <u>28th</u> Day of <u>September</u>, 2009.

E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE